IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHARITA GORDON : CIVIL ACTION
 :
v. : No. 24-6818
 :
HAVERFORD TOWNSHIP, ET AL. :

## <u>MEMORANDUM</u>

**Judge Juan R. Sánchez**            **April 28, 2026**

Plaintiff Sharita Gordon brings this action against Defendants Haverford Township, Detective Joseph Fuller, and Chief of Police John Viola (collectively "Government Defendants") in addition to Kohl's, Inc. and its employee Loss Prevention Officer Melissa Nelson (collectively "Kohl's Defendants")[1] related to Gordon's arrest and prosecution for shoplifting.  The Government and Kohl's Defendants separately move for summary judgment on each claim.  The Court will grant the Defendants' motions and dismiss all Gordon's claims because she fails to demonstrate a genuine dispute of material fact.

**BACKGROUND**

On June 22, 2023, two women and one man entered a Kohl's department store in Haverford Township and shoplifted various items.  Door Jamb Camera (entrance) 0:45-0:56, Dkt. No. 28-4; Men's Active Wear Camera 01:20-06:16, Dkt. No. 28-5; Shoes PTZ Camera 01:28-04:35, Dkt. No. 28-6; Door Jamb Camera (Exit) 0:45-0:56, Dkt. No. 28-7.  The store's surveillance system captured video of the incident.  *Id.*  Subsequently, Kohl's Loss Prevention Officer Melissa Nelson reviewed the surveillance video.  Incident Report 6/22/23 at 3, Dkt. No. 28-3.   Nelson also issued a BOLO ("Be On the Lookout") alert to other Kohl's stores which included still shots from the video.  Nelson

---

[1] Kohl's Defendants assert their proper party names are  Kohl's, Inc. and Melissa Nelson.  Dkt. No. 25-3 at 1.

Dep. 13:20-14:2, 20:1-8, 26:16-21, Dkt. 28-2.  In response, she received information that these three individuals had been involved in a previous shoplifting incident at another Kohl's location in Maryland on June 17, 2023.  *Id.* at 17:18-18:14, 19:12-20:21, 44:8-20.

During the June 17, 2023 Maryland incident, four individuals were involved in a shoplifting episode.  Incident Report 6/17/23, Dkt. No. 28-1 at 4.  Police arrived on the scene, but instead of making arrests, officers had each individual sign a "No Tresspass" agreement which included photocopies of their driver's licenses, one of which belonged to Sharita Gordon.[2]  *Id.* at 6-9; Nelson Dep. 13:6-14.  Nelson then prepared and delivered an investigation packet including the video of the incident to Haverford Township Police Department.  Nelson Dep. 26:9-25, 46:6-17.

Haverford Detective Joseph Fuller reviewed Kohl's allegations, the video, Gordon's license photo, and her criminal history.  Fuller Dep. 16:1-20:11, Dkt. No. 28-8.  Based on this information, Fuller filed for and successfully obtained an arrest warrant for Gordon on July 7, 2023 accusing her of retail theft, criminal conspiracy-retail theft, receiving stolen property, and criminal conspiracy-receiving stolen property.[3]  Police Crim. Compl. 1-4, Dkt. No. 29-10; Aff. Probable Cause 1-2, Dkt. No. 29-10.  On October 19, 2023, a Baltimore police officer informed Detective Fuller that he had taken Gordon into custody based on the warrant.  Haverford Twp. Police Incident Rep. 9, Dkt. No. 28-11.

---

[2]    Gordon disputes that she actively participated in the Maryland shoplifting incident.  Pl.'s Resp. Def. Concise Statement of Undisputed Facts ¶ 31, Dkt. No. 30-2.  But it is undisputed that she was in the Maryland Kohl's parking lot, had her license documented by Kohl's staff, and was instructed by police to never to come back to the store during this incident.  *Id.* ¶¶ 79-88.

[3]    Charges related to the Haverford shoplifting incident were also filed against the other two people, Stephon Diggs and Shanay Jackson.  Haverford Twp. Police Incident Rep. 2-3.  It is undisputed that both individuals participated in the Maryland Kohl's shoplifting incident and were accurately identified in the Haverford incident.  Pl.'s Resp. Def. Concise Statement of Undisputed Facts ¶¶ 16, 31-32.

In the Court of Common Pleas of Delaware County, Gordon's preliminary hearing was held on December 15, 2023, during which Nelson testified that she recognized Gordon as one of the perpetrators from the video even though Nelson was not present at the time of the theft and had not previously observed Gordon.  Hr. Tr. 12/15/23 at 1-3, 5:6-11:14, Dkt. No. 28-13.  The video was not played despite a best evidence objection from Gordon's defense counsel.  *Id.* at 6:1-23.  Based on Nelson's testimony, charges were held for Gordon.  *Id.* at 12:24-13:1.

Later, Gordon filed a habeas petition and a motion to suppress her identification.  Hr. Tr. 11/25/24 at 3:12-18, Dkt. No. 28-14.  On November 25, 2024, Delaware County Court of Common Pleas Judge Michael Green held a hearing on the habeas petition.  *Id.* at 1-3.  Following review of the surveillance video and comparing the individuals depicted in it to Gordon who was in the court room, Judge Green determined that Gordon was not one of the individuals in the surveillance video, granted her petition, and dismissed the case in its entirety.  *Id.* at 23:21-24:15.

On December 20, 2024, Gordon filed a federal complaint alleging (1) false arrest under § 1983 against Detective Joseph Fuller and Loss Prevention Officer Melissa Nelson, (2) malicious prosecution under § 1983 against Detective Joseph Fuller, (3) a *Monell* municipal liability claim against Haverford Township and Chief of Police John F. Viola, (4) intentional infliction of emotional distress ("IIED") against Detective Joseph Fuller and Loss Prevention Officer Nelson, (5) common law malicious prosecution against Detective Joseph Fuller, and (6) negligent hiring, supervision, and retention against Kohl's, Inc.  Compl. ¶¶ 23-82, Dkt. No 1.

On March 27, 2025, the Government Defendants filed an answer to the complaint.  Dkt. No. 13.  Kohl's Defendants failed to file a timely answer and had default entered against them on April 17, 2025.  Dkt. No. 17.  On August 19, 2025, the Court set aside the entry of default based on an agreed upon stipulation between Gordon and the Kohl's Defendants.  Dkt. No. 22.  On December 28, 2025, the Kohl's Defendants moved for summary judgment to dismiss all claims against them.

Dkt. No. 25. On December 29, 2025, the Government Defendants filed their motion for summary judgment. Dkt. No. 28. On January 20, 2026, Gordon filed a response past the deadline.[4] Dkt. No. 30. In this late response, Gordon's counsel did not address Defendants' arguments regarding the IIED and negligence claims in addition to the false arrest claim against Nelson. An oral argument on the motions for summary judgment was held on February 3, 2026.

**STANDARD**

A court will grant summary judgment if a moving party can establish "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). The moving party bears the initial burden of identifying the parts of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show there is a genuine issue of material fact requiring the case to proceed to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is "material" if it could affect the outcome of the suit—as determined based on the substantive law governing the issue—and a dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

In reviewing a motion for summary judgment, a court must draw all reasonable inferences in favor of the nonmoving party. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022). A court is to consider the parts of the record cited by the parties—such as depositions, documents, and affidavits—and may consider other parts of the record. Fed. R Civ. P. 56(c).

---

[4] The Court granted Gordon's Motion for Extension of Time to File a Response after this late response was filed. Dkt. No. 31.

**DISCUSSION**

The Kohl's Defendants and Government Defendants separately move for summary judgment to dismiss all claims against them. Because all of Gordon's claims fail as a matter of law or lack a genuine dispute of material fact, these claims will be dismissed. The Court will first address Gordon's claims against Kohl's Defendants: Kohl's, Inc. and Loss Prevention Officer Nelson. Then the Court will turn to the claims against the Government Defendants: Detective Fuller, Chief of Police Viola, and Haverford Township.

First, the Court will dismiss the negligent hiring, retention, and supervision claims against Kohl's, Inc. as a matter of law. At the February 3, 2026 motion for summary judgment oral argument, Gordon's counsel conceded that there is no evidence in the record to support these negligence claims. Dkt. No. 46 at 38:01-38:18. Consequently, the negligence claims against Kohl's, Inc. fail and must be dismissed.[5]

Next, Gordon's false arrest claim under § 1983 against Nelson also fails because she has not demonstrated that Nelson, a private employee of Kohl's, Inc., acted under color of state law. To hold an individual liable under § 1983, a plaintiff must prove the person acted under color of state law. 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . ."). A private party may act under color of state law if that party

---

[5] Even if Gordon retracts that concession, she still fails on these claims. To prove her claims, Gordon must put forth some evidence showing that Kohl's, Inc. was aware Nelson needed to be controlled in some way or exhibited some sort of bad conduct. *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 422 (Pa. 1968) ("[T]he problem . . . is not so much whether the duty exists, where the employer has knowledge or notice that lax control may result in injury to others, but whether in the particular case such knowledge or notice was present." (internal citation and quotation marks omitted)); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 491 (3d Cir. 2013) ("An employer knows, or should know, of the need to control an employee if the employer knows that the employee has dangerous propensities that might cause harm to a third party."). There is no evidence in the record that Kohl's, Inc. had knowledge of Nelson having any issues related to false accusations of shoplifting or any misconduct.

acted "jointly," "in concert," or "in conspiracy" with state officials. *See Cruz v. Donnelly*, 727 F.2d 79, 80 (3d Cir. 1984) (internal citation omitted). In the context of shoplifting, the Third Circuit has found that "a store and its employees cannot be liable as state actors under § 1983 unless: (1) the police have a pre-arranged plan with the store; and (2) under the plan, the police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause." *Id.* at 81. The "critical issue . . . is whether the state, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state." *Id.* at 82; *Pugh v. Downs*, 641 F. Supp. 2d 468, 475 (E.D. Pa. 2009) ("[T]he deciding inquiry was whether the state official surrendered the exercise of its official judgment to a private party, either pursuant to an agreement or statute . . . .").

So to demonstrate Nelson acted under the color of state law, Gordon must allege facts establishing a "preexisting arrangement whereby the discretionary judgment of [Haverford detectives like Fuller] employed in effectuating arrests . . . would be substituted with that of [Nelson]." *See Pugh*, 641 F. Supp. 2d at 475. The record lacks any evidence of a pre-existing agreement or other formal working procedure between Kohl's and the Haverford police. Nor is there evidence of an arrangement in which in the discretionary judgment of police would be substituted for that of Kohl's loss prevention team. *See id.* at 475 (applying "the teachings of *Cruz*" to reject the plaintiff's allegations of "a tenuous arrangement whereby [police] and [store security] worked in concert to enforce security at the casino"). In fact, Nelson undisputably reviewed the security footage of the shoplifting incident, received information that Gordon was one of the participants, and forwarded that information to Haverford law enforcement. There is no evidence that she or Kohl's, Inc. had a pre-existing plan with Haverford police and that her judgment substituted Fuller's in deciding whether to pursue an arrest. In her response, Gordon does not address this issue. Gordon's false arrest claim therefore fails against Nelson.

Gordon's IIED claims also fail because she has not provided any expert medical evidence of her emotional distress that resulted from Nelson's actions. "The four elements [a p]laintiff must show to establish [IIED] are: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Jordan v. Pa. State Univ.*, 276 A.3d 751, 775 (Pa. Super. Ct. 2022) (internal citation and quotation marks omitted). Under Pennsylvania law, IIED "recovery is limited to those cases in which competent medical evidence of emotional distress is presented by the claimant." *Gray v. Huntzinger*, 147 A.3d 924, 929 & n.4 (Pa. Super. Ct. 2016). This requires a plaintiff present expert medical testimony. *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987) ("Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress."); *Cassell v. Lancaster Mennonite Conf.*, 834 A.2d 1185, 1189 n.3 (Pa. Super. Ct. 2003) ("Expert medical testimony is necessary to establish . . . a plaintiff['s] . . . claimed emotional distress."). As acknowledged by her counsel at the February 3, 2026 oral argument, Gordon has not presented, or even attempted to present, any expert medical testimony regarding her injuries because of the alleged IIED torts. Dkt. No. 46 at 37:30-37:45. Accordingly, her IIED claim fails.

Turning to the Government Defendants, Gordon brings false arrest, federal and state malicious prosecution, and IIED claims against Fuller. As stated above, the IIED claim against Fuller fails because Gordon has failed to present expert medical testimony supporting her emotional distress.

Gordon's false arrest and malicious prosecution claims also fail because she has not provided sufficient evidence to show Fuller lacked probable cause for her arrest and prosecution. "To bring a claim for false arrest, a plaintiff must establish (1) that there was an arrest; and (2) that the arrest

7

was made without probable cause." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (internal citation and quotation marks omitted).  Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 199-200 (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).  Specifically, probable cause requires that a police officer have more than "mere suspicion" when making an arrest but does not require "evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti*, 71 F.3d at 482-83.  When reviewing whether probable cause existed, a court must apply an objective test, considering the "facts available to the officer at the moment of arrest." *Reyes v. DiLuzio*, 495 F. App'x 219, 222 (3d Cir. 2012) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1989)).

When an officer arrests an individual pursuant to a valid warrant, the false arrest probable cause analysis focuses on whether the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).  The Court must consider "two elements: first, whether the officer, with at least a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant, and second, whether those assertions or omissions were material, or necessary, to the finding of probable cause." *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (alteration in original) (internal citations and quotation marks omitted).

To prove a malicious prosecution claim under federal law, "a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of

8

liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). State malicious prosecution similarly requires proof "that the defendant (1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff." *Corrigan v. Cent. Tax Bureau of Pa., Inc.*, 828 A.2d 502, 505 (Pa. Commw. Ct. 2003).

Under both Pennsylvania and federal law, to succeed on a malicious prosecution claim a plaintiff must show that the defendant "initiated [a criminal] proceeding without probable cause" and did so "maliciously." *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017). Under federal law, police officers, as opposed to prosecutors, may be liable for malicious prosecution if they conceal or misrepresent material facts to the prosecutor. *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014). "In particular, an officer is liable if he fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute." *Morgan v. Siegfried*, No. CV 22-2454, 2026 WL 637500, at \*3 (E.D. Pa. Mar. 5, 2026) (internal citation and quotation marks omitted). So all claims require Gordon prove Fuller lacked probable cause by making false statements or omissions related to her arrest and prosecution.

Gordon attempts to claim "[t]here is a genuine issue of material facts as to whether Fuller had probable cause supporting his arrest of her for shoplifting." Pl.'s Br. Opp'n Mot. Summ. J. 5, Dkt. No. 30-1. Notably, Gordon does not claim Fuller did not review the surveillance video or disregarded it.[6] Instead, Gordon claims Fuller erroneously "based his entire conclusion that probable

---

[6]    In Gordon's response to the Government Defendant's statement of undisputed facts, she admits that "Fuller had access to Plaintiff's driver's license [and] he compared . . . the photo from her driver's license with the person [who] appeared on the video footage from the Haverford theft." Pl.'s Resp. Def. Concise Statement of Undisputed Facts ¶ 33; *see also id.* ¶ 25 ("Fuller reviewed the

cause existed to arrest Plaintiff, on her likeness to the unidentified woman, who looted the Haverford Township Kohl's Department Store" and this error precludes an entry of summary judgment for the defendants.

The question here is not whether Fuller had probable cause to arrest Gordon in the general sense.  Fuller had applied and received a facially valid arrest warrant from a neutral magistrate judge.  So, the question is whether Fuller "with at least a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant, and second, whether those assertions or omissions were material, or necessary, to the finding of probable cause."  *Andrews*, 853 F.3d at 697 (alteration in original) (internal citations and quotation marks omitted).

Under this standard, Gordon has provided no evidence that Fuller made false assertions or omission with at least a reckless disregard for the truth.  At the time Fuller applied for the arrest warrant, he had the information from the incident reports that Nelson provided identifying Gordon as one of the shoplifters.  In reviewing the surveillance footage, Gordon's license photo, and the incident report, he concluded Gordon was the person in the video shoplifting from Kohl's.  Fuller did not make any false assertions with a reckless disregard for the truth in the affidavit of probable cause based on the information he had.  Relatedly, he did not omit any material information that he possessed at the time.  Fuller was allowed to rely on the reports from Nelson and Kohl's in making his arrest.[7]  Gordon points to no disputed facts in the record to suggest Fuller intentionally

---

. . . video . . . regarding the Haverford shoplifting incident which had been forward to the police by Officer Nelson.").  Even if Gordon now attempts to dispute this fact, it would be futile because Fuller provided uncontradicted testimony in his deposition that he reviewed the footage and compared it to Gordon's license.  Fuller Dep. 18:7-19:12; *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007) ("[I]n considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness.").

[7]     In the Third Circuit and Eastern District of Pennsylvania, there are many cases where officers were found to have probable cause to arrest based off reports of private security staff.  *See, e.g.,*

misidentified her, acted with any ill will, or had any reason to question the reliability of Nelson's report.[8]

Gordon contends the fact that a Court of Common Pleas judge dismissed the criminal case against her after viewing the video creates a genuine issue of material fact. *See* Hr. Tr. 11/25/24 at 13:2-7. Specifically, Judge Green during a hearing found Gordon did not look like anyone in the surveillance video and dismissed the charges against her. *Id.* at 24:5-9. But the "validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which [s]he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). So even assuming Gordon was not one of the shoplifters on the surveillance footage and innocent of the theft charges, her innocence is irrelevant to the probable cause analysis.

---

*Garcia v. Wind Creek Bethlehem*, No. 22-CV-00292, 2022 WL 4130754, at *13 (E.D. Pa. Sep. 12, 2022) (finding an officer's "decision to rely on [the casino staff's] report [based on surveillance footage] as to the identity of the person that stole the victim's wallet, even if later determined to be inaccurate, does not eliminate the fact that he had probable cause at the time charges were filed."); *Damico v. Harrah's Phila. Casino & Racetrack*, 674 F. App'x 198, 202 (3d Cir. 2016) (holding that even if casino staff misinformed the officer about the plaintiff's behavior, the officer had no reason to disbelieve the information, which provided probable cause for the arrest); *Karkut v. Target Corp.*, 453 F. Supp. 2d 874, 884 (E.D. Pa. 2006) (holding that the police officer, who relied solely on the report of the store security personnel, had probable cause to arrest the plaintiff); *Dreibelbis v. Clark*, 813 F. App'x 64, 66 (3d Cir. 2020) (finding an officer had probable cause for a citation when he relied on security guards statements that the plaintiff was acting disorderly despite a judge later acquitting the plaintiff of the charges).

These cases were also decided using the standard false arrest probable cause analysis because these arrests were not made pursuant to a valid warrant. So even under the more stringent standard probable cause analysis, Fuller would still have probable cause for the arrest.

[8]    Gordon argues Fuller did have information to contradict his identification because she had told him she was innocent. Pl.'s Resp. Def. Concise Statement of Undisputed Facts ¶ 37. Because this statement was made after arrest warrant was issued, it has no bearing on this analysis which relies on the information Fuller had at the time of arrest. Fuller Dep. 24:8-25:11. Even if the information was available at the time of arrest, "[a]n officer making an arrest pursuant to such a warrant generally is not required to investigate the arrestee's claim of innocence or mistaken identity." *Garcia v. Cnty. of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (citing *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)).

11

The fact Judge Green found Gordon was not the woman in the video is also irrelevant to the probable cause inquiry because she needs to show Fuller made false assertions or omission based on *the information he had at the time*.  Judge Green found Gordon was not the person in the video based on comparing her complexion, weight, height, and build with the individuals in the video.[9]  Judge Green could do so because Gordon was present in the courtroom during the hearing.  Hr. Tr. 11/25/24 at 7:11-25.  Before filing for an arrest warrant, Fuller did not have the benefit of comparing Gordon in person to the video using those traits like Judge Green did.  He only had a black and white headshot photo from Gordon's driver's license and the video to compare.  The Court, upon reviewing the video itself, cannot say his identification was completely unreasonable or inaccurate.[10]

Even if Gordon can demonstrate there is a genuine dispute of material fact regarding whether Fuller had probable cause, he is entitled to qualified immunity because the right at issue is not clearly established.  "An official sued under § 1983 for an alleged constitutional violation is entitled to qualified immunity unless [the official] (1) violated a constitutional right that (2) was clearly established when he acted."  *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 85 (3d Cir. 2025).  "'[T]he party asserting the affirmative defense of qualified immunity' bears the burden of persuasion on both

---

[9]      While Judge Green did not directly state what about Gordon and the women in the video were physically different, Gordon's defense counsel repeatedly pointed to differences in weight, height, and build. *See, e.g.*, Hr. Tr. 11/25/24 at 13:2-7 ("Clearly that is a heavy set woman, obviously a blacker complexion.  That's clearly not my client.  She's much slimmer.  I mean, and the other lady . . . is much shorter than my client."); *id.* at 14:6-13 ("This lady is much bigger, much heavier. I mean, it is not my client. . . .  They do not resemble at all.  My client is slimmer."); *id.* at 15:3-5 ("[T]his lady cannot be my client.  She's much heavier, stocky, heavier built this is not Sharita Gordon.").  Judge Green appeared to credit these assertions by Gordon's counsel. *Id.* at 24:5-9 ("Mr. Raynor read into the record relevant portions of what are, in effect, assertions by Sharita Gordon. And I do find—and frankly, I am no more than a human being, but I do not see on that video anyone who resembles Sharita Gordon.").

[10]     The Court also only had the video and Gordon's license photo to compare.  Gordon has not appeared in person for any of the Court's proceedings and has not submitted record evidence that depicts her besides her license photo.

prongs at summary judgment." *Mack v. Yost*, 63 F.4th 211, 227 (3d Cir. 2023) (quoting *Halsey*, 750 F.3d at 288).

"A right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Urda v. Sokso*, 146 F.3d 311, 314 (3d Cir. 2025) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). While there need not be "a case directly on point, . . . existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). So, Fuller is entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed" to arrest Gordon "in light of clearly established law and the information the [arresting] officers possessed" at the time. *Blaylock v. City of Phila.*, 504 F.3d 405, 411 (3d Cir. 2007) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991)).

Here, a reasonable officer in Fuller's position could have found probable cause to arrest Gordon. All of Gordon's arguments allege Fuller should have done more. She argues Fuller could and should have pursued other evidence like looking into the license plate of one of the vehicles present that day, interviewing witnesses from the store, and setting up a photo array identification. Pl.'s Br. Opp'n Mot. Summ. J. 9-10. These arguments are irrelevant when analyzing qualified immunity for false arrest and malicious prosecution claims. "[T]he issue is not whether the information on which police officers base their request for an arrest warrant resulted from a professionally executed investigation . . . ." *Orsatti*, 71 F.3d at 484. Instead, the Court "should [] focus[] on the information the officers had available to them, not on whether the information resulted from exemplary police work." *Id.*

Gordon is attempting to argue Fuller did not conduct exemplary police work and should have done more to confirm Gordon was the women depicted in the video. This may be true, but what conduct constitutes good police work and what falls under qualified immunity are different. While

it may have been good police practice to perform a more thorough investigation, "officers ha[ve] no further constitutional duty to continue their investigation in an attempt to unearth potentially exculpatory evidence undermining the probable cause determination." *Lincoln v. Hanshaw*, 375 F. App'x 185, 190 (3d Cir. 2010) (citing *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)).  However, Gordon's arguments would have Fuller and other officers be forced to continue their investigations past the point of probable cause.

A reasonable officer in Fuller's position could have found probable cause.  It is reasonable for him to rely on the surveillance video in combination with the reports of Kohl's employees and any mistakes he made in identifying Gordon fall under qualified immunity.  *Orsatti*, 71 F.3d at 484 ("The qualified immunity doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (internal citation and quotation marks omitted)); *see, e.g.*, *Brandt v. Thuring*, No. CV 16-8792, 2019 WL 1418125, at *7 (D.N.J. Mar. 29, 2019) (finding officers had probable cause to detain after reviewing footage of a theft and, nonetheless, is entitled to qualified immunity "because they reasonably relied on the version of events communicated to them by Walmart's loss prevention employees in obtaining probable cause").  The Court has not identified any precedent that found a clear constitution violation occurs when an officer files for an arrest warrant using a misidentification based on surveillance footage and the reports of private employees.  Gordon's false arrest and malicious prosecution claims therefore are barred by qualified immunity.

Because Gordon fails to establish Fuller "violated plaintiff[']s] civil rights, [her] *Monell* claim also must fail." *Lincoln*, 375 F. App'x at 190 (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989)).  But even if she can bring a successful false arrest or malicious prosecution claim, she has failed to show a genuine dispute of material fact to sustain a *Monell* claim.

A municipality like Haverford Township is liable for § 1983 claims when an "action pursuant to official municipal policy" caused the violation. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). Violations may stem either from official municipal policy, including informal customs which are widely recognized, or from single decisions made by officials when they have "final authority" to set relevant policy. *Id.* at 691; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Whether officials have "final policymaking authority" is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (quoting *Pembaur*, 475 U.S. at 483). Failure to train police officers is only a basis for *Monell* liability under municipal custom "[when] the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[11] *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). In other words, this failure to train should be so glaring that it reflects a "deliberate or conscious choice by a municipality." *Id.* at 389. The focus of the allegations should rest on the details of the training, as an individual officer's failure to meet the standards of training does not equate to the training itself being flawed. *Id.* at 390-91. Notably, a municipality cannot be held vicariously liable for the actions of its employees. *Monell*, 436 U.S. at 691.

Gordon fails on her *Monell* claim for lack of sufficient evidence. In her complaint and filings, she does not identify a specific policy, practice, procedure, or custom for her *Monell* claim. She only claims Viola and Haverford Township "failed to exercise any oversight over [the] investigation and [Viola] admitted that he doesn't supervise any Haverford Township Police Officers in handling of their cases." Pl.'s Br. Opp'n Mot. Summ. J. 13. Thus, Gordon seems to be proceeding with a failure to train or supervise theory.

---

[11]    Failure to supervise claims use the same standards as failure to train claims. *Est. of Roman v. City of Newark*, 914 F.3d 789, 799 n.7 (3d Cir. 2019) ("We consider allegations of failure to train, supervise, and discipline together because they fall under the same species of municipal liability.").

This argument is conclusory and not based on the record.  Gordon has failed to demonstrate that Haverford Township had a pattern of constitutional violations.  "Under *Monell*, deliberate indifference requires 'proof that a municipal actor disregarded a known or obvious consequence of his action.'"  *Hightower v. City of Phila.,* 130 F.4th 352, 357 (3d Cir. 2025) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).  "Ordinarily, this means [] a plaintiff must show [] '[a] pattern of similar constitutional violations' put the city on notice that, by failing to act, it was being deliberately indifferent to [the plaintiff's] rights."  *Id.* (third alteration in original) (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).  Gordon does not provide any other incidents or patterns of misconduct from Haverford Township.  She only points to this one alleged incident.

A single incident can hypothetically create failure-to-train liability when "the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights" even without a pattern of constitutional violations. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014).  *But see Hightower*, 130 F.4th at 357 ("True, the Supreme Court has 'hypothesized' that 'in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference.'  But it has never found this bar satisfied." (quoting *Connick*, 563 U.S. at 63)).  Single-incident *Monell* claims survive when they are supported with sufficient evidence of the potential for a reoccurring constitutional violation and expert opinion on the issue.  *See, e.g.*, *Thomas*, 749 F.3d at 225.

Gordon does not provide sufficient evidence to bring this issue to a jury.  Viola's testimony indicates Haverford Township police officers do receive training.  Viola Dep. 12:7-13:17, Dkt. No. 28-15.  The only evidence Gordon provides is that Viola did not see a constitutional issue with Gordon's case and he does not personally supervise his officers in handling their cases.  *Id.* at 14:5-18:11.  Gordon has pointed to no evidence demonstrating this training is deficient or flawed in some

16

way beyond the incident with Gordon's arrest.  This is insufficient to create a genuine dispute of material fact on a *Monell* claim because no reasonable jury could return a verdict for Gordon.

This claims also fails because Haverford Township Police Chief Viola, "as a matter of Pennsylvania state law, . . . is not a final policymaker." *Santiago v. Warminster Twp.,* 629 F.3d 121, 135 n.11 (3d Cir. 2010) (citing 53 Pa. Stat. Ann. § 66902 which vests authority over the "organization and supervision" of township police officers with the township board of supervisors); *Hicks v. Warminster Township*, No. Civ. A. 00-2895, 2001 WL 1159750, at *3 (E.D. Pa. July 26, 2001) ("In such townships, all of the policymaking power, including over the local police force, is vested in the town supervisors."").  Gordon completely fails to present any evidence or argument regarding how the town supervisors, as final policy makers, created some policy or custom, so "she has no claim against the Township."  *Id.* at 135.  Gordon's *Monell* claims against Haverford Township and Viola fail.

**CONCLUSION**

Accordingly, the Court will grant the Defendants' motions for summary judgment and dismiss Gordon's claims.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

17